David A. Riggi, Esq.
5550 Painted Mirage Rd. Suite 120
Las Vegas, NV 89149
Ph:   1-702-463-7777
Fax:  1-888-306-7157
E-mail:RiggiLaw@gmail.com
*Attorney for the Debtor in Possession*

**UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br><br>WHISPERING PINES,<br><br>                Debtor in Possession | Case No.: 15-13891 ABL<br><br>Chapter 11<br><br>Date:  OST<br>Time:  OST |

**DEBTOR'S MOTION FOR
APPROVAL OF SALE OF PROPERTY OF THE ESTATE
FREE AND CLEAR OF LIENS AND ENCUMBRANCES AND
<u>DISTRIBUTION OF SALE PROCEEDS</u>**

Whispering Pines, Inc, Debtor and Debtor in Possession ("Debtor"), by and through its counsel, hereby moves this Court, pursuant to 11 U.S.C. §§ 105 and 363, Federal Rule of Bankruptcy Procedure 6004, and Nevada Local Rule of Bankruptcy Procedure 6004, for entry of an order approving this "Motion for Approval of Sale of Property Free and Clear of Liens and Encumbrances and Distribution of Sale Proceeds" ("Motion") for the sale of certain real property located in Thomasville, Georgia, for the purchase price of $1,278,750.00, on the terms and conditions set forth in this motion and the form of Purchase Agreement, and for the distribution of the proceeds. This Motion is based upon the attached memorandum of points and authorities, the documents on file with this Court, and any argument made at the time of the hearing.

Dated: March 3, 2016            */s/ David A. Riggi*
                                David A. Riggi, Esq.
                                5550 Painted Mirage Rd., Suite 120
                                Las Vegas, NV 89149
                                *Attorney for the Debtor in Possession*

1

# MEMORANDUM OF
# POINTS AND AUTHORITIES

## I.

## INTRODUCTION AND RELEVANT FACTS

**A.    Jurisdiction and Venue.**

1. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. The subject matter of this Motion is a core proceeding pursuant to 28 U.S.C. § 157(b).

2. Venue is proper in this district pursuant to 28 U.S.C. § 1408.

3. The statutory predicates for the relief sought in this Motion include 11 U.S.C. §§ 105 and 363, and Rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure and Rule 6004 of the Nevada Local Rules of Bankruptcy Procedure.

4. Pursuant to Local Rule 9014.2, Debtor consents to entry of final order(s) or judgment(s) by the bankruptcy judge if it is determined that the bankruptcy judge, absent consent of the parties, cannot enter final orders for judgment consistent with Article III of the United States Constitution.

**B.    General Background.**

5. On July 6, 2015, Debtor commenced a chapter 11 bankruptcy in the United States Bankruptcy Court for the District of Nevada. Debtor continues to operate its business and manage its property as a debtor in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

6. The major asset of the Debtor is a 286.69 acre tract of land located at 22945 Georgia Highway 3, Thomas County, Georgia. A document setting forth the legal description of the Property is attached hereto as **Exhibit "A"** ("Property Description").

7. The Property has a value of **$1,450,000**, according to a certified appraisal filed with this Court at Doc. No. 27-11.

8. The major creditor in this case is RH Fund X, LLC ("RH") which holds the rights to a note and first deed of trust which encumbers the Property; RH also has certain UCC and assignment of leases and rents rights encumbering the Property. The amount of the total claim of

RH is $**2,020,868.45,** as evidenced by Proof of Claim 2-1.

9. As indicated by a Preliminary Certificate of Title, issued on January 25, 2016, by the Georgia law firm of Alexander & Vann, and of which a true and correct copy is attached hereto as **Exhibit "B"** ("Preliminary Certificate of Title"), the only liens or encumbrances on the Property are those claims and rights in favor of RH.

10. On January 13, 2016, and as a result of negotiations between the Debtor and RH, a *"Stipulation and Settlement Agreement (i) Resolving Motion for Relief from Automatic Stay, (ii) Vacating Hearing, (iii) Granting Adequate Protection Pursuant to 11. U.S.C. §§ 361 and 363(e), and (iv) Providing for Conditional Discounted Payoff of Obligation and Release"* "(Settlement Stipulation") was filed with this Court as Doc. No. 104.

11. The Settlement Stipulation provides for the resolution of RH's claim of $2,020,868.45 by the payment of **$1,278,750.00**. The Debtor has been credited $25,000 toward this amount as a result of the tender of $25,000 to RH as adequate protection. As such, the amount to satisfy the claim of RH is **$1,253,750.00** - that is also the sale price. The amount must be made available to RH no later than March 14, 2016 or, with an extension that may be obtained through the payment of $7250 to RH, to April 12, 2016.

12. On February 9, 2016, a *"Motion Pursuant to 11 U.S.C. §105 and Bankruptcy Rule 9019 to Approve and Authorize Settlement Stipulation By and Between the Debtor and RH Fund X, LLC"* ("9019 Motion") was filed with this Court as Doc. No. 107.

13. On March 1, 2016, at a hearing before this Court, the 9019 Motion was granted, with the uploading and entry of the appropriate order pending.

14. Throughout the course of the reorganization, the Debtor has had no more than eight (8) purported creditors. After reviews and satisfactions of certain of those purported claims, it is now undisputed that there remain only three (3) creditors. The five (5) purported creditors that admit, through a proof of claim or through declarations, that the Debtor owes them no monies are:

    (a) the Internal Revenue Service - proof of claim 1-2 indicates an amount owed of "$0.00."

    (b) Thomas County Federal Savings and Loan ("TCFSL") - In the Declaration of

Erin Sjostrom, Senior Vice-President of TCFSL and on behalf of TCFSL, filed at Doc.No. 116, the declarant attests that Whispering Pines owes no debt to TCFSL. In addition, the declarant also attests consent to the sale and distribution.

(c) White's Fence - In the Declaration of O.B. White, on behalf of White's Fence , filed at Doc.No. 117, the declarant attests that Whispering Pines owes no debt to White's Fence. In addition, the declarant also attests consent to the sale and distribution.

(d) Dan Carter - In the Declaration of Daniel Carter, filed at Doc.No. 121, the declarant attests that Whispering Pines owes no debt to him. In addition, the declarant also attests consent to the sale and distribution.

(e) Scott Miller - In the Declaration of  Scott Miller, filed at Doc.No. 123, the declarant attests that Whispering Pines owes no debt to him. In addition, the declarant also attests consent to the sale and distribution..

The three creditors that remain, which all consent to the sale occurring on an expedited basis, are:

(f) Thomasville National Bank ("TNB") -  In the Declaration of Charles H. Hodges III, President of TNB and on behalf of TNB, filed at Doc.No. 120, the declarant attests that TNB is in favor of the sale and distribution and that "there is no need for TNB to rely on the sale, or through a chapter 11 plan, or through any further bankruptcy proceedings, for satisfaction of its claim."

(g) Farmers and Merchants Bank ("FMB") -  In the Declaration of John Everett, Senior Vice President/City Executive of FMB and on behalf of FMB, filed at Doc.No. 119, the declarant attests that FMB is in favor of the sale and distribution and that "there is no need for FMB to rely on the sale, or through a chapter 11 plan, or through any further bankruptcy proceedings, for satisfaction of its claim."

(h) RH – The major creditor and party to the Settlement Stipulation, of course, consents to the sale and distribution.

**C.     The Background, Structure and Terms of the Proposed Sale.**

15.     Debtor proposes to sell the Property to Live Oak Pond LLC ("Live Oak" or "Buyer"), a Georgia LLC that is an insider of the Debtor. Live Oak was recently formed for the purpose of purchasing the Property and may be considered wholly owned by the Debtor with its Manager being Robert Thomas III, the principal of the Debtor. The source of funding for the sale shall be a combination of a loan from Thomasville National Bank and a loan from Robert Thomas II (or another entity owned and controlled by Robert Thomas III). Live Oak was formed to accommodate Thomasville National Bank, which expressed that, although it was willing to loan funding for the purchase of the Property, it was reticent to loan monies directly to the Debtor. The loans would be purchase-money loans and, thus, be secured by the Property. Thomasville National Bank would have a first mortgage on the Property. The terms of the Purchase Agreement are standard terms, substantially in the form attached hereto as **Exhibit "C"** ("Purchase Agreement").

16.     A summary of the terms of the proposed sale to Buyer is as follows[1]:

   i.     <u>Assets To Be Purchased</u>: Buyer has agreed to purchase the Property and all of Debtor's rights and interests related thereto, free and clear of all liens or encumbrances;

   ii.    <u>Purchase Price</u>:   The Purchase Price for the Property is $ 1,278,750.00, of which $25,000 has been tendered, for a balance of $1,253,750.00;

   iii.   <u>Closing</u>: The Purchase Agreement provides for a closing date that is before twenty (20) days from the date of entry of the final Order of this Court approving the sale; and

   iv.    <u>Payment of Proceeds and Payment of Costs on Closing of the Sale</u>: The Debtor, upon the closing of the sale, proposes that the following disbursements be made:

      (a)    Payment of $1,253,750.00 to RH; and

      (b)    Payment of closing costs, to be borne by Live Oak.

---

[1] The terms of the Purchase Agreement set forth herein are summarized for ease of reference. As noted, the Purchase Agreement is attached hereto as "**Exhibit C**."

**D.      Disclosure of other Material Terms of the Sale.**

17.   District of Nevada Local Rule of Bankruptcy Procedure for the District of Nevada 6004-1 (Nevada LRBP 6004-1) provides that a sale motion must highlight, or otherwise explain, fifteen material terms of a proposed sale. All of these terms are highlighted or explained as follows:

(a)   Nevada LRBP 6004-1(b)(6)(A) provides that "a sale motion must: (A) If the proposed sale is to an insider, as defined in 11 U.S.C. § 101, the(i) identify the insider; and (ii) describe the insider's relationship to the debtor." Live Oak is an insider of the Debtor in that they share the same manager, Robert Thomas III, and Live Oak may be considered wholly owned.

(b)   Nevada LRBP 6004-1(b)(6)(B) provides that "a sale motion must: . . . (B) If a proposed buyer has discussed or entered into any agreements with management or key employees regarding compensation or future employment, the sale motion must disclose the material terms of any such agreements." There have been no such discussions or agreements.

(c)   Nevada LRBP 6004-1(b)(6)(C) provides that "a sale motion must: . . . (C) The sale motion must highlight any provisions pursuant to which an entity is being released or claims against any entity are being waived or otherwise satisfied." The Debtor is being released of the balance of the claim of RH, pursuant to the Settlement Stipulation.

(d)   Nevada LRBP 6004-1(b)(6)(D) provides that "a sale motion must: . . . (D) The sale motion must disclose whether an auction is contemplated, and highlight any provision in which the debtor has agreed not to solicit competing offers for the property subject to the sale motion or to otherwise limit the marketing of the property."

No auction is contemplated. The Property is over-encumbered by RH's mortgage, based on RH's claim of $2,020,868.45 and the appraisal valuing the Property at $1,450,000. If the time and expense of an auction, with marketing, were to occur, it would only prove fruitful if the Property were to be sold for over $2,020,868.45. It would not be hyperbole to characterize the chance of such a sale price as non-existent. Even if there were

a miniscule possibility, the certainty of completely eliminating RH's debt and encumbrance of the Property greatly outweighs the unlikelihood of a sale that would be over almost 150 percent of the appraised value. Moreover, the only parties that might benefit from an unlikely result of an auction and marketing procedure – TNB and FMB – have attested their consent to the sale notwithstanding what the value of the Property might be.

(e) Nevada LRBP 6004-1(b)(6)(E) provides that "a sale motion must: . . . .(E) The sale motion must highlight any deadlines for the closing of the proposed sale or deadlines that are conditions to closing the proposed transaction." The closing deadline is March 14, 2016, or, if the Debtor tenders, or causes to be tendered, the amount of $7,446.86 before March 14, 2016, then the closing deadline would be April 12, 2016.

(f) Nevada LRBP 6004-1(b)(6)(F) provides that "a sale motion must:   . . . (F) The sale motion must highlight whether the proposed purchaser has submitted or will be required to submit a good faith deposit and, if so, the conditions under which the deposit may be forfeited." The sum of $25,000 was tendered on behalf of Live Oak and that amount was credited against the original purchase price of $1,278,750.00. If the sale is not closed by March 14, 2016, or, if an extension is obtained, by April 12, 2016, then the $25,000 is forfeited.

(g) Nevada LRBP 6004-1(b)(6)(G) provides that "a sale motion must: . . . .(G) The sale motion must highlight any provision pursuant to which a debtor is entering into any interim agreements or arrangements with the proposed purchaser, such as interim management arrangements (which, if out of the ordinary course, also must be subject to notice and a hearing under 11 U.S.C. § 363(b)), and the terms of the agreements." No such interim agreements or arrangements have been, or will be, discussed or negotiated.

(h) Nevada LRBP 6004-1(b)(6)(H) provides that "a sale motion must: . . . (H) The sale motion must highlight any provision pursuant to which a debtor proposes to release sale proceeds on or after the closing without further court order, or to provide for a definitive allocation of sale proceeds." The proceeds shall be distributed to RH on the date of closing. Because RH is the only encumbrancer on the Property and because all creditors

have consented to such a distribution, it is appropriate for the order from this Motion to allow such a distribution.

(i) Nevada LRBP 6004-1(b)(6)(I) provides that "a sale motion must: . . . (I) The sale motion must highlight any provision seeking to have the sale declared exempt from taxes under 11 U.S.C. § 1146(a), and the type of tax (e.g., recording tax, stamp tax, use tax, or capital gains tax) for which the exemption is sought. It is not sufficient to refer simply to "transfer" taxes and the state or states in which the affected property is located." No such exemptions are asserted.

(j) Nevada LRBP 6004-1(b)(6)(J) provides that "a sale motion must: . . . (J) If the debtor proposes to sell substantially all of its assets, the sale motion must highlight whether the debtor will retain, or have reasonable access to, its books and records to enable it to administer its bankruptcy case." All books and records will be retained by the Debtor and be available.

(k) Nevada LRBP 6004-1(b)(6)(K) provides that "a sale motion must: . . .(K) The sale motion must highlight any provision pursuant to which the debtor seeks to sell or otherwise limit any rights to pursue avoidance claims under chapter 5 of Title11 of the United States Code." The Debtor is not seeking any such sales or limitations.

(l) Nevada LRBP 6004-1(b)(6)(L) provides that "a sale motion must: . . . (L) The sale motion must highlight any provision limiting the proposed purchaser's successor liability." There is no provision limiting successor liability.

(m) Nevada LRBP 6004-1(b)(6)(M) provides that "a sale motion must: . . . (M) The sale motion must highlight any provision by which the debtor seeks to sell property free and clear of a possessory leasehold interest, license or other right." The Debtor is not seeking that the sale be free and clear of any such rights.

(n) Nevada LRBP 6004-1(b)(6)(N) provides that "a sale motion must: . . . (N) The sale motion must highlight any terms with respect to credit bidding pursuant to 11 U.S.C. § 363(k)." There are no terns relating to credit bids. The only party that could credit bid, RH, has consented to the sale as proposed.

(o)  Nevada LRBP 6004-1(b)(6)(O) provides that "a sale motion must: . . . (O) The sale motion must highlight any provision whereby the debtor seeks relief from the fourteen (14) day stay imposed by Fed. R. Bankr. P. 6004(h)." Because time is of the essence, the Debtor does seek immediate relief from the 14 day stay of FRBP 6004(h).

## II.
## LEGAL ARGUMENT

**A.    Approval of the Sale is Appropriate.**

18.    Section 363(b)(1) of the Bankruptcy Code provides that a debtor, "after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  Section 105(a) provides in relevant part that "[t]he Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).

19.    Courts typically consider the following four factors in determining whether a proposed sale satisfies this standard: (a) whether a sound business justification exists for the sale, (b) whether adequate and reasonable notice of the sale was given to interested parties, (c) whether the sale will produce a fair and reasonable price for the property and (d) whether the parties have acted in good faith.  *See, e.g.*, *In re Weatherly Frozen Food Group, Inc.*, 149 B.R. 480, 483 (Bankr. N.D. Ohio 1992); *In re Delaware & Hudson Ry. Co.,* 124 B.R. 169, 176 (D. Del. 1991); *In re George Walsh Chevrolet, Inc.,* 118 B.R. 99, 101-02 (Bankr. E.D. Mo. 1990).

1. <u>Sound Business Reason Exists for the Sale of the Assets.</u>

20.    A sale of a debtor's assets should be authorized pursuant to section 363 of the Bankruptcy Code if a sound business purpose exists for doing so.  *See Stephens Indus. v. McClung*, 789 F. 2d 386, 390 (6th Cir. 1986) ("bankruptcy court can authorize a sale of all a Chapter 11 debtor's assets under [Section] 363(b)(1) when a sound business purpose dictates such action."); *Licensing By Paolo, Inc. v. Sinatra (In re Gucci),* 126 F. 3d 380, 387 (2nd Cir. 1997) ("A sale of

9

a substantial part of a Chapter 11 estate may be conducted if a good business reason exists to support it."); *Comm. Of Equity Security Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F. 2d 1063, 1071 (2nd Cir. 1983); *In re Chateaugay Corp.*, 973 F. 2d 141, 143 (2nd Cir. 1992); *Comm. Of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) ("Where the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct.").

21. The Debtor can reduce its debt by over $700,000.00 through the sale of the Property. To emphasize that fact – it is not a recharacterization of part of RH's claim from a secured to an unsecured status; it is an absolute release of debt in the amount of $700,000.00. Obviously, the Debtor is benefitted by such a release. The other two remaining creditors – TNB and FMB – are also benefitted when considering that their debts will likely be satisfied from resources that are part of, what may referred to as, the Robert Thomas III group of entities and assets. Their assent is an indication that TNB and FMB, whose have claims against Debtor's related entities, surmised that the chances of their recovery are greatly increased by any decrease of liability to the Debtor. A sound business reason exists for the sale of the Property.

2. <u>Adequate & Reasonable Notice is being Provided to All Interested Parties.</u>

22. The Debtor is undertaking extraordinary efforts to provide adequate and reasonable notice to interested parties. Discussions have been on-going with counsel for TNB and FMB regarding the terms of the sale and the procedures to obtain an order allowing the sale and proceeds distribution. Moreover, the terms of the sale have already been noticed to all parties in interest as part of the process to obtain approval of the Settlement Stipulation. That has culminated in all creditors offering declarations that are aware of and approve the sale. Finally, direct and immediate notice will be accomplished for this Motion. *See, e.g.*, *In re WBQ Partnership,* 189 B.R. 97, 103 (Bankr. E.D. Va. 1995) ("notice is sufficient if it includes the terms and conditions of the sale, if it states the time for filing objections, and if the estate is selling real estate, it generally describes the property") (quoting *In re Karpe,* 84 B.R. 926, 929 (Bankr. M.D. Pa. 1988)).

### 3. The Sale Will Produce a Fair and Reasonable Price.

23. The sale Price of $1,278,750.00 is only slightly less than the appraised value of $1,450,000. Moreover, closing and other costs and fees of the sale are not included in that sale price. Finally, the actual benefit to the estate will be over $2,000,000.00 when accounting for the release of the claim of RH. The sale considerations, therefore, are not only fair and reasonable, but an overwhelmingly advantageous bargain for the Debtor, the estate and creditors.

### 4. The Parties are Acting in Good Faith.

24. Courts generally conclude that parties have acted in good faith with respect to a proposed sale if the purchase price is adequate and reasonable and the terms of the sale are disclosed fully. *See, e.g.*, *In re Abbotts Dairies of Pa., Inc.,* 788 F. 2d 143, 149-50 (3rd Cir. 1986). Although the Bankruptcy Code does not define "good faith purchaser," courts interpreting Section 363(m) of the Bankruptcy Code have held that "the requisite misconduct necessary to establish a lack of good faith involves 'fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders.'" *In re AFY*, 734 F.3d 810, 818 (8th Cir. 2013) (quoting *In re Burgess*, 246 B.R. 352, 356 (8th Cir.BAP 2000) (quoting *In re Rock Indus. Mach. Corp.*, 572 F.2d 1195, 1198 (7th Cir.1978))); *see also*, *Marin v. Coated Sales, Inc.* (*In re Coated Sales, Inc*.), 1990 WL 212899 (S.D.N.Y. Dec. 13, 1990). *In re Sasson Jeans, Inc.*, 90 B.R. 608, 610 (S.D.N.Y. 1988) (quoting *In re Bel Air Asocs., Ltd.,* 706 F. 2d 301, 305 (10th Cir. 1983)). Yet, because there is no bright line test, courts examine the facts of each case by concentrating on the "integrity of [an actor's] conduct during the sale proceedings." *In re Pisces Leasing Corp.,* 66 B.R. 671, 673 (E.D.N.Y. 1986) (quoting *In re Rock Indus. Machinery Corp.*, 572 F. 2d 1195, 1198 (7th Cir. 1978)). The facts of this proposed sale clearly manifest a transparency and integrity that demonstrates good faith by all parties.

//   //   //   //   //

//   //   //   //   //

11

**B.     The Property May be Sold Free and Clear Liens, Encumbrances Claims, and Interests.**

25.     Section 363(f) of the Bankruptcy Code provides that the trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if –

(1)     applicable nonbankruptcy law permits sale of such property free and clear of such interest;

(2)     such entity consents;

(3)     such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(4)     such interest is in a bona fide dispute; or

(5)     such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest. 11 U.S.C. § 363(f).

26.     Because RH is the only entity that has a lien or encumbrance on the Property, and because RH consents to the sale being free and clear of any of its claims, section 363(f) is fulfilled. Section 363(f) is drafted in the disjunctive. Thus, satisfaction of any of the requirements enumerated therein will suffice to warrant Debtor's sale of the Property free and clear of all interests and claims. *See In re James,* 203 B.R. 449, 453 (Bankr. W.D.Mo. 1997); *Citicorp Homeowners Services, Inc. v. Elliot*, 94 B.R. 343, 345 (E.D. Pa. 1988).  In addition, a court may authorize the sale of a debtor's assets free and clear of any liens, claims, or encumbrances under Section 105 of the Bankruptcy Code. *See Volvo White Truck Corp. v. Chambersburg Beverage, Inc. (In re White Motor Credit Corp.)*, 75 B.R. 944, 948 (Bankr. N.D. Ohio 1987) ("Authority to conduct such sales [free and clear of liens] is within the court's equitable powers when necessary to carry out the provisions of Title 11.").

**C.     The Proceeds of the Sale May be Immediately Distributed to RH.**

27.     The case of *Rosenberg Real Estate Equity Fund III v. Air Beds, Inc. (In re Air Beds, Inc.)*, 92 B.R. 419 (B.A.P. 9th Cir. 1988), provides an analysis for the allowance of a distribution of sale proceeds, without the time and expense to the estate of disclosure statement and plan confirmation process. Proceeds of a sale may occur, outside such a process, on the basis of "extraordinary circumstances," *Id*. at 422, with a showing of an "immediate need." *Id*. at 423. It is, indeed, an "extraordinary circumstance[]" when a claim for over two million dollars will be satisfied through the tender of an amount discounted by over $700,000 and, as a percentage, over 35 percent. Moreover, it is an "immediate need" when this opportunity can be lost, and the Property can be foreclosed to RH, if the sale is not closed by March 14, 2016. It should also be understood that the possibility of a confirmable plan didn't really materialize, if at all, until the resolution was obtained with the three other major creditors – TCFSL, TNB, and FMB. Those resolutions only became final through the signings of the declarations on March 1, 2016.

**D.     Relief under Bankruptcy Rule 6004(h) is Appropriate.**

28.     Debtor requests that any order approving the free and clear sale of the Property become effective immediately upon its entry. Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property … is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Because all parties consent to the sale and because the sale may be lost if not quickly closed, good cause exists for the Court to waive the 14-day stay period under Bankruptcy Rule 6004(h).

// // // // //

// // // // //

## III.
## CONCLUSION

**WHEREFORE**, Debtor requests approval of this Motion and entry of an order, substantially in the form attached hereto as "**Exhibit D**," authorizing the sale of the Property to Live Oak free and clear of liens and encumbrances, with immediate distribution, and that the 14 day stay of Rule 6004(h) be immediately terminated.

3rd of March, 2016.

                                                        */s/ David A. Riggi*
                                                        David A. Riggi, Esq.
5550 Painted Mirage Rd., Suite 120
Las Vegas, NV 89149
Ph.:    1-702-463-7777
Fax.:   1-888-306-7157
E-mail: riggilaw@gmail.com
***Attorney for the Debtors in Possession***